

**Signed and Filed: April 22, 2026**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>CLAUDE DENNIS WILKES,<br><br><br>Debtor. | ) Bankruptcy Case<br>) No. 11-51135-DM<br>)<br>) Chapter 13<br>)<br>)<br>)<br>)<br>)<br>) |
| CLAUDE D. WILKES,<br><br>Plaintiff,<br>v.<br><br>THE SANTANA ROW-DEFOREST<br>BUILDING CONDOMINIUM HOMEOWNERS<br>ASSOCIATION, et al.,<br><br>Defendants. | ) Adversary Proceeding<br>) No. 25-05016-DM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM DECISION REGARDING SUBMITTED MATTERS

### I.    INTRODUCTION

Claude Dennis Wilkes ("Debtor") petitioned for relief under chapter 13 of the Bankruptcy Code,[1] thereby commencing this case over fifteen years ago.

---

[1]    Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code (the "Code"), 11

The primary question here, and in the related Adversary Proceeding No. 25-5016 (the "AP"), is whether a pre-petition special assessment owed to Debtor's former homeowner association, the DeForest Building Condominium Owners Association (the "HOA"), was discharged when Debtor received his discharge, and if so, whether the HOA violated the discharge injunction when it failed to cease litigating a case in state court that began after this case was previously closed without a discharge.

Before the court are three motions:

(1) the HOA's *Motion for Partial Summary Judgment; Mandatory and Permissive Abstention* ("MPSJ") (AP Dkt 68) filed in the AP;

(2) Debtor's *Opposition to Defendant's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment* ("CMSJ") (AP Dkt 71) also filed in the AP; and

(3) the HOA's *Motion for Ordering Confirming Creditor's Right to Offset or Recoup Post-Petition* ("Offset Motion") (BK Dkt 128) filed in the main bankruptcy case.[2]

---

U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedures, Rules 1001-9037.

[2] The main bankruptcy case was initially assigned to the Honorable Arthur S. Weissbrodt. After Judge Weissbrodt's retirement, the case was re-assigned to the Honorable M. Elaine Hammond in July 2015. When Judge Hammond retired, the case was then re-assigned to the Honorable Dennis Montali in November 2025. At the time of Judge Hammond's retirement, the court had held a hearing on the HOA's Offset Motion and taken it under submission. The court had not yet heard oral argument for the HOA's MPSJ and Debtor's CMSJ. After reassignment, Judge Montali held a hearing on both matters. By this decision, the court is disposing of all three matters

The court concludes that Debtor's claims in his Amended Complaint (AP Dkt 11) that, inter alia, the HOA violated the discharge injunction to be unavailing. Debtor has not identified any conduct by the HOA which occurred *after* he received his discharge that would give rise to a claim under § 524(a)(2), and the other causes of action he has pled in his Amended Complaint are either untimely or inapplicable.

Additionally, the court concludes that the HOA has offset rights associated with the discharged debt because Debtor has returned to the fray by pursuing litigation in this court and state court and he may be liable for damages incurred by the HOA. In any event the HOA is entitled to any affirmative defenses that do not threaten Debtor's discharge but would reduce or eliminate any of Debtor's claims against it.

The HOA's MPSJ will be granted[3], Debtor's CMSJ will be denied, and the HOA's Offset Motion will be granted.

The court is concurrently entering an order in the HOA's favor and a separate order on the Offset Motion in the main case.

There are two unrepresented individuals, Jurgen Weller and Suzie Mize, named as defendants in the AP. The record reflects a series of submissions by Debtor and orders by the court leading to the present situation. Neither defendant has been properly served, the court is denying all relief to Debtor against the HOA, and a final judgment should be entered in the AP, for lack

---

for the completion of the record and conclusion of the AP and the only pending matter in the main case.

[3] Despite the word "Partial" in the Motion, this Memorandum Decision and the order and Judgment that follow, support disposing of it in its entirety.

3

of prosecution as to those persons. If Debtor in good faith believes he is entitled to any relief against Mr. Weller or Ms. Mize, the court will give him one more chance to do so. A final judgment disposing of the entire AP will be entered two weeks from the date of this Memorandum Decision unless, prior to then Debtor files a request for an alias summons and requests a scheduling conference to be held on June 26, 2026 at 1:30 pm. If Debtor is willing to abandon these efforts before then, he should file a statement to that effect within two weeks and the court will issue the judgment.

## II. <u>BACKGROUND</u>

Debtor purchased real property in San Jose (the "Condo") over twenty years ago. The Condo is located in a common interest development managed by the HOA. Debtor was responsible for paying the HOA regular dues and assessments.

Debtor's transaction was originally financed by a mortgage loan from Washington Mutual Bank and later taken over by JPMorgan Chase Bank, N.A. ("JPMorgan"), who eventually initiated foreclosure proceedings on the Condo which led Debtor to file this chapter 13.

Per his schedules, Debtor listed the value of the Condo as $650,000, encumbered by a senior deed of trust held by JPMorgan, securing a debt in the amount of $980,000, and a junior lien for $15,000 owed to the HOA based on arrears.

Based on this over-encumbrance, Debtor filed a motion ("Avoidance Motion") (BK Dkt 48) asking the court to hold that the HOA had a wholly unsecured lien junior to JPMorgan ("Avoidance Action"). The HOA did not oppose the Avoidance

Motion, and it was granted by the court. Debtor did not contest the deficiency claim that followed, nor did Debtor challenge the validity of the HOA's lien but only its secured status.

The court confirmed Debtor's Chapter 13 Plan in December 2011 and in October 2016, the Chapter 13 Trustee ("Trustee") notified the court that Debtor had completed all plan payments. However, the Trustee stated that Debtor was not entitled to a discharge because he had not completed a required personal financial management course and had not complied with certain non-standard provisions in the confirmed plan. The case was closed in November 2016 without a discharge.

While this case was closed, JPMorgan foreclosed on the Condo in June 2022. Whatever secured rights the HOA had—notwithstanding the Avoidance Action—were thus eliminated by operation of the foreclosure.[4]

During the period that this case was closed without a discharge, the HOA began collection efforts against Debtor for delinquent assessments and in April 2018, the HOA filed a complaint in Santa Clara County Superior Court (the "State Court Action") captioned *The Santana Row-Deforest Building Residential Condominium Owners Association v. Claude Wilkes et al*, 18CV326162) seeking to foreclose on the Condo. Debtor filed a cross-complaint ("State Cross-Complaint") in the State Court

---

[4] Debtor has repeatedly argued that the HOA has an invalid lien, citing state law. But Debtor has conceded that no state or federal court has ever invalidated the HOA's lien. Regardless, whatever lien arguments Debtor contends are relevant became moot after JPMorgan foreclosed on the collateral property.

5

Action based on slander of title and breach of the Davis-Stirling Act.

A year and a half later, and over eight years from when this case was closed without discharge, Debtor returned to this court and filed an application to re-open the case so that he could resolve the outstanding requirements to obtain his discharge. After the case was re-opened and Debtor provided the requisite documents, he was granted a discharge on April 29, 2024 and the case was closed.

Another year went by and Debtor once again sought to re-open the case, this time for the purpose of removing the State Court Action to the bankruptcy court and to file an adversary complaint against the HOA. Over the HOA's opposition, this case was re-opened in May 2025, and Debtor initiated the AP.

## III.  **LEGAL STANDARDS**

Federal Rule of Civil Procedure 56(c), made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, mandates entry of summary judgment where a moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thrifty Oil Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 322 F.3d 1039, 1045 (9th Cir. 2003). The movant has the burden of proof. *See N. Slope Borough v. Rogstad (In re Rogstad)*, 126 F.3d 1224, 1227 (9th Cir. 1997).

As there are no material facts in dispute, summary judgment is appropriate and the court will dispose both the MPSJ and CMSJ.

//

//

## IV. DISCUSSION

### A. Summary Judgment – MPSJ and CMSJ

Debtor pled nine causes of action in his Amended Complaint:

(1) Count I – Violation of discharge injunction (11 U.S.C. § 524(a)(2));

(2) Count II – Violation of automatic stay (11 U.S.C. § 362(a)(6));

(3) Count III – Declaratory relief that the HOA's claims were discharged and that continued collection efforts violate federal law;

(4) Count IV – Violation of the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. §§ 1692e, 1692f);

(5) Count V – Violation of the Rosenthal Act (Cal. Civ. Code § 1788.17);

(6) Count VI – Tortious interference with prospective economic advantage;

(7) Count VII – Civil harassment (Cal. Civ. Proc. § 527.6);

(8) Count VIII – Violation of the Davis-Stirling Act (Cal. Civ. Code §§ 4515, 5655, 5976); and

(9) Count IX – Defamation (slander per se) and invasion of privacy (Cal. Civ. Code § 46).

In its MPSJ, the HOA argues that the majority of Debtor's causes of action are time-barred as a matter of law. In the court's *Order Denying Defendant's Motion to Dismiss* (AP Dkt 63), Judge Hammond agreed with the HOA and concluded that most of Debtor's causes of action were untimely. The court here incorporates Judge Hammond's ruling and reiterates that under the applicable statutes of limitation, Counts 4 through 9 are

7

untimely and/or inapplicable here.[5]  Although Debtor did not appeal or seek reconsideration of the court's conclusion regarding timeliness, he has since argued that Rule 15's relation back doctrine saves the untimely counts.

Only Debtor's claims for violation of the automatic stay under § 362(c) and violation of the discharge injunction under § 524(a) survived.

Section 362(c)'s automatic stay terminates when a case is closed.  11 U.S.C. § 362(c)(2)(A).  This case closed on November 23, 2016 and was not re-opened until January 23, 2024.  Since there was no stay in effect during this period, the HOA was free to act without violating § 362(c).  Additionally, whether the Avoidance Action was still effective was an open question that could be dealt with in the Superior Court or this court but is now moot.

Section 524 deals with the effect of a discharge. It provides that "[a] discharge in a case under this title […] operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2).  However, when a case is closed without a discharge, the injunction does not apply and a creditor may collect on the debt.

[5]  Counts 4 and 5 have 1-year statutes of limitations; Counts 6 and 9 have 2-year statutes of limitations; Count 7 has a 3-year statute of limitation; and Count 8 is governed by a 5-year statute of limitation.  All the conduct alleged in the Amended Complaint as to Counts 4 through 9 occurred in 2019 at the latest.

Here, the HOA initiated the State Court Action in April 2018, during the time that this case was closed without a discharge. When this case closed, Debtor still owed the HOA for his delinquent assessments. The lien strip affected by the Avoidance Action did not wipe out the debt owed to the HOA; the underlying debt still existed, albeit in an unsecured status as of the date the Avoidance Motion was granted. Debtor conceded that status in the Avoidance Motion and has never questioned the existence of that status since, but only that the HOA did not file an unsecured claim. More importantly, when Debtor did finally receive his discharge in April 2024, the debt owed to the HOA was discharged and any activity by the HOA to collect on this debt post-April 2024 would have violated § 524(a)(2).

But the HOA's failure to dismiss the State Court Action and its continued filings in this case do not constitute such a violation. Section 524(a)(2)'s injunctive provision is intended to be used as a shield to protect the debtor rather than a sword against the creditor. *In re Irigoyen*, 659 B.R. 1, 12-13 (9th Cir. BAP 2024); *see also, In re Watson*, 192 B.R. 739, 749 (9th Cir. BAP 1996); *In re Getzoff*, 180 B.R. 572, 575 (9th Cir. BAP 1995).

The HOA's conduct has largely been defensive. After Debtor received his discharge, the HOA did not appear before the bankruptcy court nor file any moving papers. It was only when Debtor filed his motion to re-open the case in April 2025—with the stated purpose of seeking affirmative relief against the HOA—that the HOA appeared and filed an opposition.

Similarly, the HOA's posture in the State Court Action has been defensive. The HOA has only filed two documents in the State Court Action since Debtor received his discharge: a notice of no opposition to Debtor's attorney's motion to withdraw as counsel in the State Court Action, and a related proof of service. The HOA even admits that it is only still in the State Court Action because Debtor refuses to drop his State Cross Complaint

In sum, the unsecured obligation owed to the HOA was discharged when Debtor received his discharge. But Debtor has not provided any undisputed material facts which show that the HOA has tried to collect on that discharged debt which would give rise to a claim under § 524(a).

Lastly, as there is no private right of action to enforce a discharge injunction violation, the commencement of Debtor's adversary proceeding against the HOA is the wrong avenue for relief even if the HOA had violated § 524(a). *See, Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 509 (9th Cir. 2002); *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011).

That is not to say that Debtor has no available paths for recourse if the HOA ever does violate the discharge injunction in the future; if that does occur, Debtor may always return to this court and move for contempt.

B. **The HOA's Affirmative Defenses**

The HOA has alleged two different but related affirmative defenses: the equitable right to offset and the "return to the fray" doctrine.

### 1. **Offset**

The bankruptcy law allows a creditor to offset a claim that the debtor owes it against a claim that it owes the debtor, as long as both debts arose before the bankruptcy. *In re De Laurentiis Group Inc.*, 963 F.2d 1269, 1274 (9th Cir. 1992), *cert. denied*, 506 U.S. 918 (1992). The offset right is allowed as a defense to a claim brought *by the debtor* against a creditor and the creditor can claim only an amount large enough to offset its debt and cannot collect anything further from debtor. *Id.* at 1277.

For example, "if the debtor and the creditor each owed the other $20, they could set those debts off against each other, rather than attempting to collect from each other." *Id.* at 1274. The policy underlying the offset right is to avoid 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)).

In the present case, the HOA's claims of offset rights are permissible as they are based on mutual, pre-petition obligations between Debtor and the HOA. *In re Fu*, Case No. 17-41205 CN, 2020 WL 9211230, at *4 (Bankr. N.D. Cal. Sept. 25, 2020). (citing *In re Pieri*, 86 B.R. 208, 210 (9th Cir. BAP 1988)). In other words, under § 553(a), the HOA is required to establish two elements: timing and mutuality. *In re Verco Industries*, 704 F.2d 1134, 1139 (9th Cir. 1983).

The court concludes that both criteria have been satisfied in this case.

As a clarifying matter, the underlying debt owed to the HOA was not extinguished by the Avoidance Motion. In filing that motion, Debtor never disputed the underlying debt owed to the HOA and after the court granted the Avoidance Motion that debt became an unsecured obligation owed to the HOA that was eventually discharged in 2024. There was no need for HOA to file a proof of claim.

The timing element requires that both claims arose pre-petition. Both Debtor's counterclaims in Superior Court against the HOA for slander of title and breach of the Davis-Stirling Act and the HOA's breach of contract claim are pre-petition claims. This conclusion derives from the Code's expansive definition of the terms "claim" and "debt." *Buckenmaier*, 127 B.R. at 238. Section 101(11) defines "debt" as a "liability on a claim" and a "claim" is defined by § 101(4)(A) as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. §§ 101(11), 101(4)(A). Here, the claims arise from Debtor's 2007 purchase of the Condo and the related contract between Debtor and the HOA. Therefore, they are pre-petition claims.

With respect to mutuality, in order for debts to be mutual, "something must be 'owed' by both sides" *Buckenmaier*, 127 B.R. at 238. The requirement of mutuality is easily met here: the Debtor and the HOA are the same parties and the dispute here arose out of the purchase of the Condo.

Case: 25-05016   Doc# 116   Filed: 04/22/26   Entered: 04/23/26 11:12:01   Page 12 of 15

With the requirements of timing and mutuality being satisfied here, the question is whether the HOA's offset rights survived Debtor's 2024 discharge. The court concludes that it does.

A majority of courts have held that a valid offset claim cannot be defeated by a discharge and a creditor's right to offset a mutual, pre-petition debt survives even the discharge of the debtor. *See*, 5 COLLIER ON BANKRUPTCY ¶ 553.08 (16th ed. 2026); *De Laurentiis*, 963 F.2d at 1276-78; *In re Luongo*, 259 F.3d 323 (5th Cir. 2001); *In re Davidovich*, 901 F.3d 1533, 1537 (10th Cir. 1990); *In re Buckenmaier*, 127 B.R. 233, 236-37 (9th Cir. BAP 1991).

As such, it appears clear to the court that the entire accrued amount of Debtor's underlying pre-petition discharged debt then owed may be used to offset any amount he may recover against the HOA in the future.

### 2. Return to the Fray

In addition to its right to offset, the HOA has also contended that it would be entitled to post-petition attorneys' fees under the so-called "return to the fray" doctrine.

The Ninth Circuit has held that "post-petition attorney fee awards are not discharged where post-petition, the debtor voluntarily 'pursue[d] a whole new course of litigation,' commenced litigation, or 'return[ed] to the fray.' Voluntarily." *In re Ybarra*, 424 F.3d 1018, 1024 (9th Cir. 2005) (quoting *Siegel v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525, 533-35 (9th Cir. 1998)). In *Ybarra*, the Ninth Circuit endorsed the "notion that by voluntarily continuing to pursue litigation post-

petition that had been initiated pre-petition, a debtor may be held personally liable for attorney fees and costs that result from that litigation." *Ybarra*, 424 F.3d at 1024.

The Ninth Circuit BAP extended the *Ybarra* rule to litigation that begins post-petition regardless of the forum in which the post-petition litigation takes place. *In re Gillespie*, 516 B.R. 586, 591-92 (9th Cir. BAP 2014). The focus of the *Ybarra* inquiry is on the debtor's motivation for engaging in the post-petition litigation and "whether the debtor 'returned to the fray' to press his disputed claims and property interests or for some other purpose." *Gillespie*, 516 B.R. at 592; *see also, Ybarra*, 414 F.3d at 1023-24.

Here, the court concludes that Debtor is not entitled to a discharge of the HOA's post-petition attorneys' fees given that he chose to resume his participation in the State Court Action and in this court post-petition. After receiving his discharge in 2024, instead of using the discharge as a fresh start, Debtor took affirmative steps to voluntarily continue the State Court Action as well as re-opening this bankruptcy case to litigate against the HOA.

## V. CONCLUSION

For the foregoing reasons, Debtor's CMSJ is DENIED, the HOA's MPSJ is GRANTED, and the HOA's Offset Motion is GRANTED.

**END OF MEMORANDUM DECISION**

14

## COURT SERVICE LIST

<u>Via U.S. Mail:</u>

Claude D. Wilkes Jr.

4683 Flagstaff Dr.

Folsom, CA 95630


<u>Via ECF:</u>

All ECF Recipients

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

Case: 25-05016   Doc# 116   Filed: 04/22/26   Entered: 04/23/26 11:12:01   Page 15 of 15